UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS KLEINBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:05CV2028 CDP |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the Commissioner's final decision denying Plaintiff Thomas Kleinberg's application for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Kleinberg claims that he is disabled because of bi-polar disorder, heart valve problems, and stroke in combination with his age, education and work experience. The Administrative Law Judge, however, found that Kleinberg was not disabled. Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision.

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he will, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

**Procedural History**

On November 22, 1999, Kleinberg filed an application Supplemental Security Income pursuant to Title XVI of the Social Security Act. Kleinberg alleged disability since January 4, 1989[2] because of poor vision, heart valve problems, stroke, shortness of breath, an impaired left arm, petit mal seizures, hearing loss, diarrhea, bi-polar disorder, and schizophrenia. On September 21, 2001, following a hearing, an Administrative Law Judge (ALJ), found that Plaintiff was not disabled as defined in the Social Security Act, and the Appeals Council of the Social Security Adminstration denied Kleinberg's request for review on September 13, 2002. Kleinberg then appealed to this Court, which remanded the case pursuant to the Social Security Administration's motion to remand. A new hearing was held on September 2, 2004 before a new ALJ, and that ALJ also determined that Kleinberg was not disabled as defined by the Social Security Act in a decision dated July 2, 2005. Kleinberg did not need to return to the Appeals Council before appealing again to this court. Therefore, the decision of the ALJ stands as the final determination of the Commissioner.

---

[2] The ALJ's opinion only addressed Kleinberg's claims of disability after September 25, 1999 because his earlier claims had been addressed in an adverse Title XVI decision dated September 24, 1999. The ALJ did not find good cause to reopen that earlier decision.

## Evidence Before the Administrative Law Judge

Kleinberg was 50 years old at the time of the hearing. He had graduated from high school and had a four-year college degree in public relations and marketing. He had previously been employed as a telemarketer and as a stock clerk.

Kleinberg has not engaged in any substantial gainful activity since November 22, 1999. Although Kleinberg has worked since his claimed onset date, there is no indication of his receiving any income in the relevant post-November 21, 1999 period. Kleinberg asserts that he became unable to work because of poor vision, heart valve problems, stroke, shortness of breath, an impaired left arm, petit mal seizures, hearing loss, diarrhea, bipolar disorder and schizophrenia.

At the most recent hearing, Kleinberg testified regarding his asserted medical conditions. Kleinberg denied problems with alcohol, but admitted having suicidal thoughts, talking to himself, lying, agitation, and depression. Kleinberg complained of poor concentration, possible decreased hearing, paranoia, poor memory, and lack of motivation. Kleinberg further testified that he had no one with whom he regularly socialized. He testified that he had lived in a house with no water or utilities for approximately two years. He stated that his parents would

not allow him to live with them because he did not get along with them. Kleinberg testified that he had received assistance through BJC Behavioral Heath with his medication and psychiatric treatment. His testimony revealed that he spent his time reading or sleeping and that he slept fourteen hours a day. He testified that he lacked the motivation and ability to keep up on household chores.

The ALJ did not have a vocational expert testify at the hearing, but instead posed a number of interrogatories to vocational expert, Michael Brethauer.[3] The ALJ posed a hypothetical question that asked whether an individual with Kleinberg's characteristics could perform his past relevant work or if there would be any jobs that a hypothetical individual with Kleinberg's characteristics could do. These characteristics included his age, education, training, past relevant work experience and limitations which precluded frequently lifting and carrying more than twenty five pounds, occasionally lifting and carrying more than fifty pounds, and more than occasional interaction with supervisors, co-workers and the public. Kleinberg's limitations did not include any limitation on his ability to sit, stand and walk and imposed no more than a moderate limitation on on his ability to appropriately respond to work pressures and changes in routine work settings.

---

[3] The interrogatories and Brethauer's responses were not included in the original transcript filing with this Court. On February 15, 2007, the Social Security Administration supplemented its response to include this information.

The vocational expert's interrogatory responses indicate that such an individual could perform unskilled medium work as a packager, machine feeder, or cleaner, and that this conclusion was consistent with the DOT.

In addition to this testimony, the ALJ also received into evidence a disability report filled out by C. Reeves. This report indicates that Kleinberg seemed distracted at times and was a poor historian for dates and events. It also indicates that he was unshaven and odorous and that he did not seem comfortable, mentally, talking about his condition.

Additionally, the ALJ had further evidence in the form of a Daily Activities Questionnaire that had been filled out by Joseph Carter, Kleinberg's friend and landlord. This questionnaire indicates that Carter had seen Kleinberg suffering disorientation, shortness of breath, weakness, unpredictable responses to stress, and zombie-like behavior. Carter further opined that Kleinberg would have difficulty working.

### Medical Records[4]

By October 9, 1999, Kleinberg had been seen by Dr. Bun Tee Co, a treating psychiatrist, who noted no acute systems but added Trazodone as a medication.

---

[4]As noted above, the facts to be considered in this case are limited to the evidence pertaining to the period after September 25, 1999 because the ALJ did not reopen the prior decision.

On November 6, 1999, Kleinberg had remained stable, and Dr. Co noted noted that Kleinberg worried about possibly getting sick.

By December 3, 1999, Kleinberg had been seen several times by Susan Englund, Ph.D., his therapist. In September, she completed a brief psychiatric rating scale, and she rated Kleinberg as having a global assessment of functioning (GAF) of 65. In her December evaluation, Dr. Englund rated Kleinberg as having a GAF of 60. At that time, she also diagnosed Kleinberg with major depressive disorder, and indicated that although he struggled with day to day life, he was trying to find solutions to his mental difficulties. Additionally, she rated his ongoing somatic concerns as severe.

On January 11, 2000, Dr. Warren Lonergan performed an internal medicine evaluation on Kleinberg at the request of the Social Security Administration. Dr. Lonergan did not find signs or symptons of cerebral vascular accident in Kleinberg, nor did Kleinberg demonstrate extraordinary poor vision, or signs of physical impairment.

On that same date, L. Lynn Mades, Ph.D. performed a psychological evaluation of Kleinberg. Dr. Mades reviewed Dr. Englund's notes and indicated that Kleinberg's psychological problems were contributing to his somatic complaints. She noted "possible somatic delusions," but was unable to determine

if they were actually delusions rather than exaggerations. She also noted that Kleinberg's insight and judgment was somewhat limited. Dr. Mades diagnosed Kleinberg with hypochondriasis, anxiety disorder and a personality disorder. Dr. Mades concluded that Kleinberg could perform simple, manual tasks, with limited interaction with others, and could complete a normal workday without interruptions from mental disorder. She further noted that he was oriented to all spheres and had a normal memory, good focus, adequate concentration, fair verbal judgment, a cooperative and pleasant attitude, an alert experession, good eye contact, normal motor activity, normal language ability, and logical and sequential thought flow. She found that he did not have suicidal or homicidal ideation or hallucinations. She found his thought content to be normal except as to physical and emotional problems.

On January 26, 2000, Ofelia Gallardo, M.D., a non-treating, non-examining DDS psychiatrist, completed a Mental Residual Functional Capacity Assessment of Kleinberg. Dr. Gallardo concluded that the record showed that Kleinberg suffered significant limitation in his abilities to: work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work

setting. Dr. Gallardo's opinions were based on an analysis of Kleinberg's anxiety and personality disorder. Dr. Gallardo indicated that Kleinberg possessed inflexible and maladaptive personality traits that caused either significant impairment in social or occupational functioning, or subjective distress, including persistent disturbance of mood or affect and pathological dependence, passivity, or aggressivity.

On February 7, 2000, Dr. Englund wrote a letter to the Disability Determination Section in support of Kleinberg's application for benefits. Dr. Englund had seen Kleinberg approximately 35 times between May 1999 and February 2000, and in her opinion, Kleinberg was unable to work.

Kleinberg continued to see Dr. Co through 2000 and 2001. Dr. Co's 2000 records reveal that Kleinberg demonstrated a flat affect, fair mood, and fair insight and judgment and that Dr. Co adjusted Kleinberg's medication. Dr. Co's 2001 records indicate that Kleinberg remained stable on medication, with varying moods from "down" to "better." The 2001 records also indicate that Kleinberg was increasing socialization.

On September 7, 2000, a Psychosocial/Clinical Assessment was prepared by BJC Behavioral Health for Kleinberg. Dr. Co had diagnosed Kleinberg in July 2000 with major depression, rule-out bipolar disorder and assigned a GAF of 60.

At the time of the BJC assessment, Kleinberg was assigned a GAF of 70.

On January 10, 2002, Kleinberg was seen by Dr. Snehal Gandhi, who treated Kleinberg for hypertension and for an injury to his left shoulder that occurred while Kleinberg was drunk.

Kleinberg was hospitalized at St. Louis University Hospital from September 24-26, 2002 for delirium tremens/seizures, hypertension, and depression. While at the hospital, Kleinberg did not have seizures, and he had a normal CT scan. He did not have an EEG at that time. Kleinberg was again hospitalized on October 15, 2002 with complaints of staying up for several days and of seizures. He was diagnosed with bipolar I disorder with psychotic features, codependent personality disorder, and assigned a GAF score of 55. Kleinberg was given a CT scan on October 19, 2002 with negative results. The medical report indicates that Dr. Co believed that Kleinberg had rapidly gone through his anxiety medication and was seeking more of that medication. The records indicate no seizure disorder.

On October 23, 2002, Kleinberg was again seen by someone at BJC Behavioral Health who filed out an annual assessment addendum/treatment plan. Kleinberg was diagnosed with major depression and assigned a GAF of 55-60. The following year, Dr. Sasha Khosravi performed another BJC Behavioral Health assessment in which she diagnosed Kleinberg with bipolar affective disorder, rule-

out mood disorder, and alcohol dependence. She assigned Kleinberg a GAF score of 55-60. Yet another BJC Behavioral Health Assessment was performed in August 2004. In that assessment, Kleinberg was noted as reporting a history of bipolar type two disorder, and Kleinberg reported that he had stopped heavy alcohol abuse about two years previously. He was diagnosed with bipolar affective disorder, alcohol dependence, and assigned a GAF of 60.

On December 13, 2003, Dr. Gandhi reported that Kleinberg's psychiatrist had become concerned about his blood pressure, but that Kleinberg's blood pressure was all right on exam. Dr. Gandhi also indicated that Kleinberg was inconsistent with follow-through and had a major psychiatric disorder.

On October 13, 2004, the Minnesota Multiple Personality Inventory was administered to Kleinberg at the request of the Social Security Administration. The results of this test were considered invalid and were not interpreted. Ultimately, the evaluator, Corine Hyman, M.S., and her supervisor, Phyllis Terry Friedman, Ph.D., concluded that Kleinberg was an unreliable reporter of his current functioning, that he met the criteria for Bipolar I disorder, that he appeared to have adequate memory functioning, and that his cognitive functioning was relatively intact. Dr. Friedman's statement regarding Kleinberg's ability to do work-related activities indicates that Kleinberg would be slightly limited in remembering and

carrying out simple instructions and making simple judgments. She also indicated that Kleinberg would be moderately limited in interacting appropriately with the public, interacting appropriately with supervisors, interacting appropriately with co-workers, responding appropriately to work pressures in a usual work setting, and responding appropriately to changes in a routine work setting.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider: (1) the credibility findings made by the Administrative Law Judge; (2) the education, background, work history, and age of the claimant; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question. Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful

activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d

1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

Id. at 1322.

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. Singh, 222 F.3d at 451. A treating physician's opinion concerning a claimant's impairment will be granted controlling weight, if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Id. While a treating physician's opinion is usually entitled to great weight, the Eighth Circuit has cautioned that an opinion "do[es] not automatically control, since the record must be evaluated as a whole." Prosch v. Apfel, 201 F.3d at 1013.

The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations in which other medical assessments "'are supported by better or more thorough medical evidence'" or in which a treating physician gives inconsistent opinions that undermine the credibility of the opinions. Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)). In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to "always give good reasons" for the particular weight the ALJ chooses to give the opinion. Singh, 222 F.3d at 452; Prosch, 201 F.3d at 1013; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

## The ALJ's Findings

The ALJ found that Kleinberg was not disabled, considering his age, education, work experience and residual functional capacity. (Tr. 304). He issued the following findings:

1. The claimant has not engaged in substantial gainful activity since November 22, 1999, the date he filed his application. 20 C.F.R. § 416.920(b).

2. The claimant has been more than minimally limited by a bipolar disorder and alcoholism. 20 C.F.R. § 416.920(c). Thus, he satisfies the requirement for a severe impairment.

3. The claimant's condition has not met or medically equaled a listing in 20 C.F.R. pr. 404. subpt. P, app. 1. 20 C.F.R. § 416.920(d).

4. The claimant's allegations are not credible for reasons discussed in the body of this decision. Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984); 20 C.F.R. § 416.929.

5. Since November 22, 1999, the claimant has had the residual functional capacity to lift or carry fifty pounds occasionally and twenty-five pounds frequently. He has been able to sit, stand and walk without limitation. He has also been able to interact with supervisors, co-workers and the public on an occasional basis, and has had only moderate limitations in responding appropriately to work pressures and changes in a routine work setting (moderate being defined as still able to function satisfactorily). 20 C.F.R. § 416.945.

6. The claimant does not have any past relevant work. 20 C.F.R. § 416.920(e).

7. The claimant was a younger individual on November 22, 1999, and is now a person approaching advanced age. 20 C.F.R. § 416.963.

8. The claimant has more than a high school education. 20 C.F.R. § 416.964.

9. The claimant has been able to perform work existing in significant numbers in the national economy since November 22, 1999. 20 C.F.R. § 416.920(f). This finding is based on the credible report of a vocational expert.

10. The claimant has not been disabled as defined by the Social Security Act since November 22, 1999. Thus, he is not eligible for Supplemental Security Income.

## Discussion

Kleinberg raises two arguments on appeal of the Commissioner's decision. He first argues that the ALJ failed to give proper weight to the opinion of Dr. Susan

Englund. Kleinberg's second argument is that the ALJ failed to proffer the vocational expert interrogatories, and he notes that the interrogatories are not contained in the record.

Kleinberg's second argument is now moot, and so need not be addressed in detail. Although Kleinberg is correct that the interrogatories were not contained in the original transcript supplied by the Social Security Administration, a supplemental certificate has been submitted that now contains this information. Because Kleinberg has not submitted a reply brief raising any substantive concerns with regard to the vocational expert's opinion, as he indicated he would do if necessary in his initial brief, this argument is now moot.

Kleinberg's contention that ALJ erred by not giving proper weight to the opinion of Dr. Englund also fails. Although a treating physician's opinion is generally given controlling weight, it does not automatically control. Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). An ALJ may properly "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013.

Here, the ALJ found Dr. Englund's opinion that Kleinberg was unable to

work because of depression and anxiety to be inconsistent with her opinion during that period that Kleinberg had a Global Assessment of Functioning of 63, 65, and 60. Scores of 63 and 65 indicate a mild impairment and a score of 60 indicates moderate symptoms. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). This inconsistency alone is substantial evidence that is inconsistent with Dr. Englund's opinion, and therefore, is a sufficient reason for the ALJ not to give controlling weight to Dr. Englund's opinion. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005).

Further, the ALJ noted further medical inconsistencies which would allow Dr. Englund's opinion to be disregarded. Dr. Englund based her opinion of Kleinberg's mental problems in part on his medical difficulties, but the ALJ found no record to support a finding of any significant physical problems. The ALJ also noted that Dr. Englund relied heavily on Kleinberg's subjective complaints in stating her opinion, and an ALJ may be justified in discrediting the opinion of a treating physician when that opinion is based solely on the claimant's subjective complaints and not supported by other findings. Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993). As a result, the ALJ was not compelled to give controlling weight to Dr. Englund's opinion.

Considering all the factors set forth in Polaski, 739 F.2d at 1330, see supra, I

find that the ALJ's determination of no disability is supported by substantial evidence in the record as a whole, and should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2007.